SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
GREGORY F. HURLEY, Cal. Bar No. 126791
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1993
Telephone:   714.513.5100
Facsimile:   714.513.5130
E mail   ghurley@sheppardmullin.com

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
HAYLEY S. GRUNVALD, Cal. Bar No. 227909
12275 El Camino Real, Suite 200
San Diego, California 92130-2006
Telephone:   858.720.8900
Facsimile:   858.509.3691
Email:   hgrunvald@sheppardmullin.com

Attorneys for Defendants,
HOME DEPOT U.S.A., INC., and
HD DEVELOPMENT OF MARYLAND, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| FRANCISCA MORALEZ,<br><br>    Plaintiff,<br><br>v.<br><br>HOME DEPOT U.S.A., INC. dba THE HOME DEPOT; HD DEVELOPMENT OF MARYLAND, INC.,<br><br>    Defendants. | Case No. 3:17-cv-02918-SI<br>Honorable Susan Illston<br><br>**NOTICE OF MOTION AND MOTION FOR RECONSIDERATION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(b); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: February 1, 2019<br>Time: 9:00 a.m.<br>Location: Courtroom 1 - 17th Floor<br><br>Action Filed:   May 22, 2017<br>Trial Date:   March 11, 2019 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 1, 2019 at 9:00 a.m., or as soon thereafter as counsel may be heard in the above-captioned Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 1 – 17th Floor, the Honorable Susan Illston presiding, Home Depot U.S.A. Inc. and HD Development of Maryland (collectively, "Defendants") will and hereby do move, pursuant to Federal Rule of Civil Procedure 60(b)(2) and (b)(3) and Northern District Local Rule 7-9(b), for reconsideration of the Court's Order on Defendants' Motion to Stay dated November 15, 2018 (the "Order") on the grounds that (1) newly discovered evidence is of such a magnitude that production of it earlier would have been likely to change the disposition of the case and, (2) Plaintiff's counsel's misrepresentations of fact led to fraud on the Court and, on that basis, prevented the Court from properly evaluating the merits of Defendants' Motion.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all other pleadings, papers, records and documentary materials on file or deemed to be on file in this action, those matters on which this Court may take judicial notice, and upon the oral argument of counsel made at the hearing on this Motion.

SHEPPARD MULLIN RICHTER & HAMPTON LLP

Dated: December 17, 2018    By    */s/ Hayley S. Grunvald*
GREGORY F. HURLEY
HAYLEY S. GRUNVALD

*Attorneys for Defendants*
HOME DEPOT U.S.A., INC., and
HD DEVELOPMENT OF MARYLAND, INC.

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................... 1
II. FACTUAL AND PROCEDURAL BACKGROUND ............................................ 2
    A. Newly Discovered Facts Following 341(A) Hearing ................................ 3
    B. Misrepresentation of Fact Made by Plaintiff's Counsel Constitute Fraud on the Court ........................................................................................................... 6
III. LEGAL STANDARD FOR RECONSIDERATION ............................................ 7
IV. ARGUMENT .......................................................................................................... 8
    A. Newly Discovered Facts Support Reconsideration ................................... 8
    B. A Fraud On the Court Supports Reconsideration ...................................... 9
    C. This Court Is The Correct Court To Decide Whether To Stay This Lawsuit ......... 11
    D. Defendants Are Concerned That If They Settle This Case With The New Mission Law Firm, The Trustee Will Pursue Defendants To Recover Any Monies Paid To The New Mission Law Firm In Attorney's Fees ..................................... 12
V. CONCLUSION ..................................................................................................... 12

## CONCISE STATEMENT OF RELIEF SOUGHT

Pursuant to Federal Rule of Civil Procedure 60(b), Home Depot U.S.A. Inc. and HD Development of Maryland ("Defendants") respectfully request that the Court reconsider its Order of November 15, 2018 [Dkt. No. 48] denying Defendants' Motion to Stay.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

On October 30, 2018, Home Depot U.S.A. Inc. and HD Development of Maryland (collectively "Defendants") filed a Motion to Stay ("Motion") the instant matter on the basis that a Bankruptcy Petition filed by Elmer Leroy Falk ("Falk"), President and Owner of Mission Law Firm, A.P.C. ("Mission Law Firm"), in which Falk represented that he was in the process of dissolving Mission Law Firm, warranted a stay of the instant action.[1] On November 15, 2018, the Court denied Defendants' Motion on the basis that the Court did not believe a stay was warranted. However, both newly discovered facts and evidence and misrepresentations of fact made by Plaintiff's counsel in Plaintiff's Opposition filed on November 7, 2018, support reconsideration since this may have led the Court to reach a different conclusion.

The misrepresentations of fact made to the Court are grave and due process requires action be taken to not only preserve the integrity of the judicial system but to address the clear prejudice faced by Defendants. Unmistakably, Mission Law Firm dissolved on October 4, 2018 and this document was filed by Tanya Moore (or support staff at her office) with the Secretary of State on November 8, 2018. Defendants discovered this on November 17, 2018. Plaintiff's counsel filed his opposition brief on behalf of Falk's Mission Law Firm notwithstanding the fact that the Mission Law Firm no longer existed.[2] Plaintiff's counsel notified neither Defendants' counsel or this Court of this critical fact.

---

[1] For purposes of brevity, Defendants will not repeat the arguments and legal authorities set forth in their Motion to Stay and Reply Brief in Support of Their Motion to Stay and instead direct the Court to their moving papers at Docket Nos. 43 and 47.

[2] While Zachary Best's signature appears on Plaintiff's Opposition brief, it was filed using Tanya Moore's ECF login information.

On November 1, 2018, the Moore Law Firm changed its name to Mission Law Firm, A.P.C., using the exact same address as Falk's dissolved Mission Law Firm, presumably to give the impression to its clients and the Court that business as usual continued despite Falk's Bankruptcy. And yet, Plaintiff's counsel failed to notify the Court or Defendants' counsel of the new legal entity representing Plaintiff. When the Trustee learned of this name change, he commented that it was "an unauthorized post-petition transfer of one our assets." Despite Plaintiff's counsel's repeated assertion that the Bankruptcy Court has the tools to stay the instant case to ensure monies owed to Falk's creditors are not illegally drained, this is far from the truth and, as discussed more fully below, a reconsideration of Defendants' Motion is not only warranted but crucial.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Briefly, in Plaintiff's Opposition brief filed on November 7, 2018, Plaintiff's counsel made representations of fact which Defendants learned on or around November 17, 2018, were patently false and which Defendants believe led the Court to erroneously deny their Motion. Shortly after discovering these falsities, on November 29, 2018, Defendants' counsel sent correspondence to Plaintiff's counsel detailing the newly discovered evidence and that patently false statements were made by him to the Court in Plaintiff's Opposition brief. *See* Declaration of Hayley S. Grunvald ("Grunvald Decl."), ¶ 2, Exh. A. Plaintiff's counsel refused to take any action to inform the Court (he even questioned why meet and confer efforts were necessary), but instead, suggested that Defendants' counsel had engaged in a conflict of interest[3], was communicating inappropriately with a represented party[4] and he ended the email with a stern warning that "[t]hese are serious

---

[3] The repeated suggestion by Plaintiff's counsel that Gregory Hurley's representation on a pro bono basis of Fatemah Saniefar in a RICO lawsuit pending in the Eastern District of California somehow runs afoul of the relevant Rules of Professional Responsibility or presents a conflict of interest is erroneous. Plaintiff's counsel cannot point to any specific rule that either Mr. Hurley or Sheppard Mullin has violated which further confirms that the allegations are purely retaliation for the RICO action and an attempt to bully and scare Mr. Hurley and the Firm into withdrawing from the RICO case. It follows that if any conflict existed (it does not) between Firm clients, it could easily be cured by a simple waiver.

[4] Plaintiff's counsel, Zak Best, is a defendant in the Saniefar RICO action. Defendants are

positions your firm is taking that I strongly encourage you to rethink." *See* Grunvald Decl., ¶ 3, Exh. B.

**A.     Newly Discovered Facts Following 341(A) Hearing**

With respect to newly discovered evidence, on November 15, 2018, a Bankruptcy Code Section 341(A) Meeting of Creditors took place which was presided over by Bankruptcy Trustee James E. Salven ("Trustee Salven") to evaluate and address Falk's Chapter 7 Bankruptcy Petition. During the 341(A) hearing, several new facts were discovered that warrant a stay of the instant case. Below are excerpts of the relevant testimony given by Falk following questioning by the Bankruptcy Trustee and counsel for Falk's creditors:

MR. MARUM:  Did you file the dissolution of the Mission Law firm with the California Secretary of State?
MR. FALK:  I signed it and everything and sent it to Moore Law Firm.
THE TRUSTEE:  Do you recall when you did that?
MR. FALK:  October 4th, I think it was.
MR. MARUM:  So you didn't file it with the California Secretary of State?  The Moore Law Firm did?
MR. FALK:  Yes.
MR. MARUM:  Why did the Moore Law Firm file that when you're the sole shareholder of Mission Law Firm?
MR. FALK:  I think's attorney-client privilege.
THE TRUSTEE:  Is Moore Law Firm your attorney?
MR. FALK:  Yes.

*See* Grunvald Decl., Exh. D, Transcript of 341(A) at 15:14-16:3.

THE TRUSTEE:  Who were the employee of Mission Law?
MR. FALK:  Best was the attorney.  Tanya Moore, she was actually the one that handled all --
THE TRUSTEE:  Okay.  Is Tanya Moore related to the Moore Law Firm?
MR. FALK:  Yes.
THE TRUSTEE:  Okay.
MR. FALK:  Yeah.  And she's CEO and secretary.

---

baffled by the allegation that communications with Mr. Best, which are solely related to instant litigation, constitute communication with a represented party.  Further, on April 17, 2018, Mr. Best sent email correspondence to Defendants' counsel advising that since Defendants' counsel's law firm was involved in the Saniefar RICO action, all further communications must be in writing.  *See* Grunvald Decl., ¶ 4, Exh. C.  Defendants' counsel has strictly honored Mr. Best's request and all communications between counsel have been in writing and a well-documented record confirms that there have been no inappropriate communication with Mr. Best.  *Id.*  Again, Defendants believe this is yet another attempt by Mr. Best to bully and scare Defendants into rethinking their involvement in the RICO action.  *Id.*

*See* Grunvald Decl., Exh. D, Transcript of 341(A) at 16:22-17:5.

THE TRUSTEE: Let me just cut to the chase.
MR. FALK: Yeah.
THE TRUSTEE: When you -- when this agreement that you're going to give me copy, the purchase agreement, when you bought it, were you actually running it, or were you just the name?
MR. FALK: Just the name.
THE TRUSTEE: They were in trouble with what they were doing, and so they sold it to you, and then they kept running it?
MR. FALK: Yeah.
THE TRUSTEE: Okay.
MR. MARUM: Why did you agree to do that deal?
MR. FALK: Well, I was going to do some things here in Fresno. But what happened was I got Stage IIIA lung cancer, and completely disabled. So I haven't been able to go to court. Can't even -- I can't walk to the court anymore.
THE TRUSTEE: So one of the things I'm going to be real interested in and real focused on is there's a lot of fee apps that were awarded to Mission Law. I wonder where the money went. Did you ever receive any money from Mission Law?
. . .
THE TRUSTEE: So what happened to all the -- you know, there was some -- there was some fee award in October, I think.
MR. LOWE: This October?
THE TRUSTEE: Yeah.
MR. LOWE: Okay.
THE TRUSTEE: It was a big number too. Do you know if that money was paid?
MR. FALK: No.
THE TRUSTEE: Who was writing the checks?
MR. FALK: Well, the thing of it is, all those things, if they're not settled or they haven't been to court, there's really not -- no assets yet until they're done, until they're final.
THE TRUSTEE: No, I'm talking about some where the judge actually awarded fees.
MR. FALK: Yeah.
THE TRUSTEE: I don't know if they were paid. But you're going need to find all this out.
MR. FALK: What's that, in October? I was in the hospital most of the time.
THE TRUSTEE: So let's just say -- I'm make believe here. Let's say in October you're in the hospital and Mission Law firm got a $100,000 fee award to them.
MR. FALK: Yeah.
THE TRUSTEE: And they got paid. Who handled the money?
MR. FALK: Tanya Moore.
THE TRUSTEE: And she paid whoever she wanted to pay?
MR. FALK: Yeah.

*See* Grunvald Decl., Exh. D, Transcript of 341(A) at 18:10-20:19.

MR. MARUM: What were the gross revenues of the Moore Law Firm in 2017?
. . .
MR. FALK: I don't know.
MR. MARUM: Have you ever received any tax documents at the end of the year from the Mission Law Firm on account of your ownership interest in it?
MR. FALK: No.
MR. MARUM: Never?
MR. FALK: So let me add. Let's say there's - - I don't know, there's like 100 – I mean, I'd call that, not being a lawyer at all, I just see there's a zillion lawsuits out there. So you're going to dissolve this – they are – somebody is going to dissolve this. Who's going to take over these lawsuits?

| | |
|---|---|
| 1 | MR. FALK: I don't know. |
| | . . . |
| 2 | THE TRUSTEE: And they filed lawsuits in 2017 and 2018 claiming that they – |
| | MR. FALK: Oh, I'm talking about their lawsuits. I thought you were talking about their lawsuits. |
| 3 | THE TRUSTEE: Oh, I'm not worried about their lawsuits. I'm looking at -- here's what I'm looking at, real quick, so you understand. |
| 4 | MR. FALK: Yeah. |
| | THE TRUSTEE: Let's say there's 118 lawsuits out there that Mission Law was involved with, |
| 5 | may have incurred costs with, that it's entitled to be reimbursed. Then I don't know whether that's your money, their money or the Man in the Moon's money. But I want to know where it went and |
| 6 | who's going to get it. |
| | MR. FALK: Yeah. It's not me. |
| 7 | THE TRUSTEE: Well, I'm not sure why it isn't. |
| | . . . |
| 8 | THE TRUSTEE: If you're the lead lawyer for this firm and there's all these lawsuits that they're -- that Mission Law is representing these folks with, don't you have some requirement to see that |
| 9 | they're transitioned to a new law firm? |
| | MR. FALK: Yes. It depends -- I don't know it's going to be, though. Hopefully, it will be Moore |
| 10 | Law Firm. |
| | THE TRUSTEE: Well, Moore Law Firm ran from them the first time. |
| 11 | MR. FALK: Did we? |
| | THE TRUSTEE: Didn't they run away from a sale and find you to be the name in the front door? |
| 12 | MR. FALK: No, they never -- well, Mission was a new firm. It just started. |
| | THE TRUSTEE: I know. They got you -- you took over the cases when they got all -- when |
| 13 | everybody was breathing down their neck? |
| | MR. FALK: Yes. |
| 14 | THE TRUSTEE: Yeah. Okay. |
| | MR. FALK: Not me personally. I never interviewed anybody or anything. I did criminal law. |
| 15 | . . . |
| | MR. MARUM: Are you aware that the Mission Law Firm in the last two years as filed more than |
| 16 | 600 RICO -- I'm sorry, not RICO -- ADA lawsuits. |
| | MR. FALK: No. |
| 17 | MR. MARUM: Did you know -- |
| | THE TRUSTEE: Wait, wait. So Mission Law is owned 100 percent by you, they're filing |
| 18 | lawsuits in your -- I mean, representing other people, but you as the lead -- your firm as the lead law firm -- |
| 19 | MR. FALK: Yes. |
| | THE TRUSTEE: -- and you just didn't know anything about it? |
| 20 | MR. FALK: Right. Correct. |
| | . . . |
| 21 | MR. MARUM: Did you sell the Mission Law Firm back to Tanya Moore? |
| | MR. FALK: That's what we're working on right now. |
| 22 | THE TRUSTEE: You can't sell anything. |
| | MR. FALK: No. |
| 23 | THE TRUSTEE: You tell Tanya Moore to call me. I'll sell it to her. |
| | MR. FALK: Okay. I haven't paid -- I didn't pay anything. We made all the paperwork -- |
| 24 | THE TRUSTEE: I want the agreement what you were supposed to pay or what they original said. |
| | MR. FALK: Yeah. |
| 25 | THE TRUSTEE: And then we're going to talk about it. Then get ahold of Tanya Moore, because exactly -- if they're trying to buy that law firm, that's what I've been talking about. I want to sell it |
| 26 | to somebody before the RICO lawsuit gets going. |
| 27 | *See* Grunvald Decl., Exh. D, Transcript of 341(A) at 22:2-26:21. |
| 28 | |

| | |
|---|---|
| 1 | MR. MARUM: Are you aware that as of last week the Moore Law Firm is now called the Mission Law Firm? |
| 2 | MR. FALK: What? |
| 3 | MR. MARUM: Are you aware that as of last week the Moore Law Firm is now called the Mission Law Firm? |
| 4 | MR. FALK: No.<br>THE TRUSTEE: Well, how do I get a hold of -- who -- is Tanya -- do you have a number for Tanya Moore? |
| 5 | MR. FALK: 408.298.2000.<br>THE TRUSTEE: I'm going to get -- one question. |
| 6 | MR. MARUM: One more? |
| 7 | THE TRUSTEE: Well, wait, that's assuming those two all want to defer to you asking the one question. |
| 8 | MR. MARUM: So you didn't know that on November 1st of 2018 Tanya Moore filed an amendment to the articles of incorporation for the Moore Law Firm, a professional corporation, changing the name of that company to Mission Law Firm, a professional corporation? She filed |
| 9 | that document with the California Secretary State.<br>THE TRUSTEE: Well, I'm glad she did that. Do you have a copy of that? |
| 10 | MR. MARUM: I do.<br>THE TRUSTEE: Would you send it to me, please? |
| 11 | MR. MARUM: Gladly.<br>THE TRUSTEE: She just stole my asset. |
| 12 | . . . |
| 13 | THE TRUSTEE: And Tanya Moore and the Moore Law Firm has no right to be taking the name Mission Law, especially after you filed bankruptcy. That's a post – an unauthorized post-petition transfer of one of our assets. |
| 14 | . . . |
| 15 | THE TRUSTEE: Mission law, you owned it 100 percent --<br>MR. FALK: Yes. |
| 16 | THE TRUSTEE: -- it's property of the bankruptcy estate. |

*See* Grunvald Decl., Exh. D, Transcript of 341(A) at 25:8-28:25.

**B.     Misrepresentation of Fact Made by Plaintiff's Counsel Constitutes Fraud on the Court**

In Plaintiff's Opposition brief filed on November 7, 2018, several material misrepresentations of fact were made to the Court which support reconsideration of Defendants' Motion. Below are a list of the material misrepresentations made to the Court which Plaintiff's counsel either knew or should have known were false before making such representations to the Court in opposition to Defendants' Motion.

- Mission shareholder and attorney E. LeRoy Falk ("Falk") and his wife have filed for Chapter 7 bankruptcy. But Mission has not filed for bankruptcy, and continues to operate. (Plf. Opp. 3:13-19.)

- Mission is presently an ongoing separate legal entity with overhead, payroll, operating costs, and employment agreements. (Plf. Opp. 3:28-4:2.)

- Mission itself continues to operate, and it and attorney Zachary Best continue to represent Plaintiff here. While Falk stated that he is in the process of dissolving Mission, Falk's rights arising from such a dissolution are now in the hands of the bankruptcy trustee who can resolve any and all of the issues Defendants expresses disingenuous concern about here. Meanwhile, Plaintiff here is fully represented and capable of prosecuting this action. (Plf. Opp. 5:11-15.)

- Plaintiff is presently represented by attorney Zachary Best and Mission. If or when Mission dissolves, then it can be presumed that the attendant requirements of the California Rules of Professional Conduct and the California Corporations Code will govern that dissolution. Granting a stay because of some event which might take place is groundless. If Mission dissolves, a new attorney of Plaintiff's choosing will substitute in, and the case will proceed. (Plf. Opp. 6:6-11.)

### III. LEGAL STANDARD FOR RECONSIDERATION

A court may reconsider and vacate a prior order pursuant to its inherent authority, Federal Rule of Civil Procedure ("FRCP") 60(b), and Northern District of California Civil Local Rule 7-9. *See Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 887 (9th Cir. 2001). This Court may reconsider an interlocutory order if there has been "a manifest failure … to consider material facts or dispositive legal arguments which were presented to the Court[.]" N.D. Cal. Civil L.R. 7-9(b); *Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *see also Kona Enterprises, Inc. v. Estate of Bishop*, 229 F. 3d 877, 890 (9th Cir. 2000); *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4478 at 790) Courts routinely reconsider orders where they did not consider material facts or legal arguments. *See, e.g.*, *Chevron USA, Inc. v. M & M Petroleum Servs. Inc.*, 2008 WL 4809964, at *2 (C.D. Cal. Oct. 27, 2008); *Pegasus Satellite Television, Inc. v. DirecTV, Inc.*, 318 F.Supp.2d 968, 978-79 (C.D. Cal. 2004).

As is relevant here, FRCP 60(b)(2) and 60(b)(3) allow for reconsideration of a Court order in six specific circumstances – two of which are present here. Pursuant to FRCP 60(b)(2), where a party seeks relief from judgment under Rule 60(b)(2) on the basis of newly discovered evidence, it

must show that it "exercised 'due diligence' in discovering the evidence, and also that 'the newly discovered evidence . . . [is] of such magnitude that production of it earlier would have been likely to change the disposition of the case.'" *Daghlian v. Devry Univ., Inc.*, 582 F. Supp. 2d 1231, 1252-1253 (C.D. February 19, 2008); *see also Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 211 (9th Cir. 1987) (stating the test in the context of both Rules 60(b)(2) and 59); *see also Defenders of Wildlife v. Bernal*, 204 F.3d 920, 929 (9th Cir. 2000) (stating the test in the context of a Rule 59 motion); *Hozie v. The Vessel HIGHLAND LIGHT*, CV 97-4199 ABC BQRx, 1998 U.S. Dist. LEXIS 23076, 1998 WL 938587, *1 (C.D. Cal. June 1, 1998) (stating the test in the context of a Rule 60(b)(2) motion). Under FRCP 60(d)(3), a judgment may be set aside based on fraud on the court. Fraud on the court "embrace[s] only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner." *Reiffin v. Microsoft Corp.*, 2011 U.S. Dist. LEXIS 124027, *7 (N.D. Cal. 2011), *citing Alexander v. Robertson*, 882 F.2d 421, 424 (9th Cir.1989) (internal citation omitted). Here, both 60(b)(2) and 60(b)(3) warrant the Court's reconsideration of Defendants' Motion as explained more fully below.

### IV. ARGUMENT

**A. Newly Discovered Facts Support Reconsideration**

Pursuant to FRCP 60(b)(2), on or around November 17, 2018, Defendants obtained newly discovered evidence which is "of such magnitude that production of it earlier would have been likely to change the disposition of the case." The newly discovered facts show unequivocally that Mission Law Firm was in fact dissolved by Falk on October 4, 2018 and the dissolution document was filed by Tanya Moore with the Secretary of State on November 8, 2018.[5] *See* Grunvald Decl.,

---

[5] On December 7, 2018, Falk admitted to Trustee Salven that the signature which appears on the dissolution document is not in fact even his signature. Falk believed that he signed the dissolution document via DocuSign but admitted that the document filed with California's Secretary of State was not the one he believes he signed electronically. *See* Grunvald Decl., ¶ 10, Exh. H, Transcript of 341(A) at 15:23-16:17; 16:20-18:5. Since Falk was unequivocal in his testimony that Tanya Moore filed the dissolution documents with the Secretary of State, one can presume that either Tanya Moore or someone from her office signed Falk's signature on the dissolution document filed with the Secretary of State which in and of itself is problematic.

¶ 6, Exh. E. On November 1, 2018, Tanya Moore, also attorney of record for Plaintiff, changed her law firm name from Moore Law Firm to Mission Law Firm, A.P.C. *See* Grunvald Decl., ¶ 7, Exh. F. This document was filed with the Secretary of State on November 1, 2018 but was also only discovered by Defendants on or around November 17, 2018. *Id.* Mysteriously, the Secretary of State website currently lists Mission Law Firm, A.P.C. as operating as Tanya Moore's old Moore Law Firm, at the exact same address as Falk's dissolved Mission Law Firm, A.P.C., despite the fact that on November 26, 2018, Plaintiff's counsel filed a substitution of counsel stating that he now works for Moore Law Firm. [Dkt. 49.] There is in fact no corporation listed on the California Secretary of State's website which operates under the name "Moore Law Firm, P.C." and is entitled to do business in California. *See* Grunvald Decl., ¶ 8, Exh. G. In fact, Defendants learned after the Court denied their Motion to Stay on November 15, 2018, that at the time Plaintiff's Opposition brief was filed, Mission Law Firm had already been dissolved by Falk. *Id.* These newly discovered facts support a reconsideration of the Court's denial of Defendants' Motion since they strongly suggest that Ms. Moore and her cohorts are engaged in a shell game designed to mislead the Court and to put assets beyond the reach of Mr. Falk's bankruptcy trustee. To the extent Plaintiff's counsel contends he was unaware of these facts, Defendants believe that at a minimum, he had an affirmative obligation to correct his misstatements which Defendants notified him of on November 29, pursuant to California Rules on Professional Conduct 3.3, Candor Toward the Tribunal.

**B.      A Fraud On the Court Supports Reconsideration**

Pursuant to FRCP 60(d)(3), a judgment may be set aside based on fraud on the court which "does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner." Undoubtedly, various false statements of fact were made by Plaintiff's counsel to intentionally mislead the Court that Defendants' Motion was baseless and must be denied when, in fact, the true facts might have led the Court to reach a different conclusion. As evidenced in Falk's testimony at his 341(A) hearing above, Falk stated unequivocally that Tanya Moore, attorney of record for Plaintiff, handled the filing of all documents related to the dissolution of Mission Law Firm, A.P.C. on October 4, 2018.

Clearly, one of the main factors in the Court's denial of Defendants' Motion was the representation by Plaintiff's counsel that Mission Law Firm, A.P.C. was still operating and, in fact, under the control of the Bankruptcy Trustee, and therefore stable. These statements were patently false since at the time Plaintiff's counsel filed his Opposition brief on November 7, 2018, Mission Law Firm had already been dissolved. To the extent Plaintiff's counsel asserts that he was simply unaware of the status of his law firm, this assertion is belied by the fact that he works in a two attorney law firm and the very attorney who runs the Firm, Tanya Moore, filed the dissolution documents and is also listed as counsel of record for Plaintiff (she indeed filed Plaintiff's Opposition brief). It follows that since one of the bases of Defendants' Motion was the status of Mission Law Firm, Plaintiff's counsel had an affirmative duty to ensure that the statements he made to the Court were true and accurate. *See* N.D. Local Rule 5-1(i)(1); Cal. Rules of Professional Responsibility 3-3. And even after Defendants notified Plaintiff's counsel of the falsities in his representations to the Court, and suggested that this caused unfair prejudice to Defendants since it likely served as fatal to their Motion, Plaintiff's counsel has refused to notify the Court.

Further troubling is Plaintiff's counsel's repeated assertion in Plaintiff's Opposition, that Defendants were trying to put Mission Law Firm, A.P.C. out of business because Defendants were anti-ADA when, in fact, the law firm had already been dissolved on October 4, 2018. (Plf. Opp. 1:2-6; 2:3-7; 3:9-10; 4:18-22; 9:5-15.) This assertion is further belied by the fact that on October 4, Tanya Moore changed her law firm name from Moore Law Firm to Mission Law Firm, A.P.C. which suggests there was no genuine concern whatsoever that Defendants' Motion would serve to hurt the law firm's reputation or put the law firm out of business. Again, as of December 17, 2018, the only entity entitled to do business in California is Mission Law Firm, A.P.C. (formerly known as Moore Law Firm) and Defendants remain confused as to why Plaintiff's counsel, Zak Best, has filed a motion for substitution of counsel seeking to change his firm name to Moore Law Firm, at the same address as the old Mission Law Firm, A.P.C., since this entity no longer exists. [Dkt. 49.] The above facts clearly suggest that Plaintiff's counsel intentionally misled the Court in order to prevent a stay of the case when one was warranted. Defendants believe these facts also

-10- Case No. 17cv02918-SI
SMRH:488748793.1   NOTICE OF MOTION AND MOTION FOR RECONSIDERATION

raise an issue regarding whether a fraud is being committed on the Court and further support a reconsideration of Defendants' Motion.

### C.     This Court Is The Correct Court To Decide Whether To Stay This Lawsuit

In Plaintiff's Opposition brief, Plaintiff's counsel repeatedly stated that Falk's Bankruptcy and the dissolution of Mission Law Firm should not be addressed by the instant Court but instead should be handled by the U.S. Bankruptcy Trustee and U.S. Bankruptcy Court. (Plf. Opp. 3:1-17; 4:1-17; 5:1-22.) This assertion is wholly disingenuous and a misrepresentation of the capacity and authority of the functionality and abilities of the Bankruptcy system.

The Trustee assigned to handle Falk's Bankruptcy, James Salven, is not an attorney, but instead an accountant. *See* Grunvald Decl., Exh. D, Transcript of 341(A) at 22:2-26:21. In the Chapter 7 context, to recover monies owed to an individual's bankruptcy estate, the Trustee usually hires an attorney to assist him or her. The Chapter 7 trustee employs the attorney on behalf of the bankruptcy estate. This employment must be approved by the bankruptcy court. Attorneys who work for a Chapter 7 trustee are paid their fees from assets of the bankruptcy estate; if the estate ends up without assets or without sufficient assets to fully pay the attorney's fees, the attorney is either not paid at all or paid only partially. This can make it challenging for a Chapter 7 trustee to find counsel, particularly in a case like Mr. Falk's bankruptcy case where the main asset – Mr. Falk's right to fees earned by the Mission Law Firm – is of uncertain value.

Trustee Salven has not yet retained counsel to assist him. *See* Grunvald Decl., ¶ 9. Unless and until he is able to locate and retain counsel to assist him, his ability to stop the new Mission Law Firm from diverting assets that should flow to Mr. Falk's creditors is limited.

Even after Trustee Salven retains counsel to represent him, Trustee Salven and his counsel will most likely ask this Court (not the bankruptcy court) to stay this lawsuit.[6] Unfortunately, by

---

[6] It is possible Trustee Salven and his counsel will instead ask the bankruptcy court to stay this lawsuit and that the bankruptcy court might conclude it has the power to impose a stay of this lawsuit. However, in all likelihood Trustee Salven and his counsel will request that this Court stay this lawsuit since Mr. Falk's bankruptcy estate is indirectly (but not directly) interested in this action insofar as the estate now owns the Mission Law Firm. In addition, a stay request made directly to this Court would not involve the potential awkwardness of asking a bankruptcy court to stay an action pending in a district court in another district.

the time Trustee Salven retains counsel and makes that motion, money that should have flowed to Mr. Falk's bankruptcy estate may have already been misdirected. And, since this Court is likely to ultimately be called on to make the decision whether to stay this case, Defendants request that the Court make that decision now.

**D. Defendants Are Concerned That If They Settle This Case With The New Mission Law Firm, The Trustee Will Pursue Defendants To Recover Any Monies Paid To The New Mission Law Firm In Attorney's Fees.**

The newly discovered evidence clearly shows that the Trustee believes Tanya Moore is stealing assets rightly owed to Falk's Bankruptcy Estate. By way of Defendants' Motion, they sought the Court to stay the instant Action to prevent a scenario whereby Defendants settle with the New Mission Law Firm only to later be sued by the Trustee to recover funds paid to the New Mission Law Firm related to attorney's fees incurred in this lawsuit. Defendants have shown unequivocally that the facts presented suggest that a fraud is being committed and, if the Court does not reconsider Defendants' Motion (and ultimately grant it), Defendants will be forced to either continue to litigate this case when they may be inclined to settle and/or simply settle with the New Mission Law Firm, A.P.C. (operating as Moore Law Firm, P.C.) and face the risk that at some point in the future, the Trustee will come after Defendants for the monies paid to the New Mission Law Firm. If this occurs, Defendants will also face additional attorneys fees and costs in obtaining counsel to assist it in fighting off the Trustee's action against them.

### V. CONCLUSION

Defendants respectfully request that the Order be reconsidered and, upon reconsideration, that the case be stayed in its entirety.

Dated: December 17, 2018        SHEPPARD MULLIN RICHTER & HAMPTON LLP

By       */s/ Hayley S. Grunvald*
         GREGORY F. HURLEY
         HAYLEY S. GRUNVALD

         *Attorneys for Defendants*
         HOME DEPOT U.S.A., INC., and
         HD DEVELOPMENT OF MARYLAND, INC.